## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| The Lyceum, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No. 1:19-cv-00731 |
| | ) | Judge James S. Gwin |
| The City of South Euclid, Ohio, | ) | |
| | ) | **Oral Argument Requested** |
| *Defendant*. | ) | |
| _____ | ) | |

## PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF ITS MOTION FOR A PRELIMINARY INJUNCTION

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................iii

INTRODUCTION ...............................................................................................................1

STATEMENT OF FACTS ..................................................................................................4

ARGUMENT .......................................................................................................................4

   I.   The Lyceum Will Likely Succeed in Showing that the Ordinance Violates Its Religious
      Exercise, Free Speech, and Due Process Rights. ...............................................................4

      A.   The Ordinance violates The Lyceum's right to exercise its sincerely held religious
          beliefs. ..........................................................................................................................5

          1.   The Ordinance is Subject to Strict Scrutiny under the Free Exercise Clause of the
              First Amendment to the U.S. Constitution...........................................................5

          2.   The Ordinance is Subject to Strict Scrutiny under Ohio Constitution Article I,
              Section 7.................................................................................................................7

          3.   The Ordinance Fails Strict Scrutiny......................................................................8

      B.  The Ordinance violates The Lyceum's Free Speech Rights under the First Amendment
         to the U.S. Constitution...............................................................................................10

          1.   The Ordinance is an Unconstitutional Content-Based Regulation. .......................10

          2.   The Ordinance is an Unconstitutional Viewpoint-Based Regulation. ...................11

      C.  The Ordinance is Unconstitutionally Vague under the Fourteenth Amendment to the
         U.S. Constitution..........................................................................................................12

   II.  The Lyceum Will Suffer Irreparable Injury Absent an Injunction, An Injunction Will Not
      Cause Substantial Harm to Others and Will Serve the Public Interest. .............................15

CONCLUSION..................................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Cases:**

*Bible Believers v. Wayne County,*
805 F.3d 228 (6th Cir. 2015) ............................................................................12

*Brush & Nib Studio, LLC v. City of Phoenix,*
418 P.3d 426 (Ariz. Ct. App. 2018)................................................................14

*Certified Restoration Dry Cleaning v. Tenke,*
511 F.3d 535 (6th Cir. 2007) ..............................................................................4

*Chicago v. Morales,*
527 U.S. 41 (1999).....................................................................................12-14

*Church of The Lukumi Babalu Aye, Inc. v. City of Hialeah,*
508 U.S. 520 (1993).................................................................................5, 8, 9

*Deja Vu of Nashville, Inc. v. Metropolitan Government of Nashville and Davidson County,*
274 F.3d 377 (6th Cir. 2001) ............................................................................15

*Elrod v. Burns,*
427 U.S. 347 (1976)...........................................................................................15

*Fraternal Order of Police Newark Lodge No. 12 v. City of Newark,*
170 F.3d 359 (3d Cir. 1999)................................................................................5

*G & V Lounge, Inc. v. Michigan Liquor Control Commission,*
23 F.3d 1071 (6th Cir.1994) .............................................................................15

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal,*
546 U.S. 418 (2006)..............................................................................................9

*Grayned v. City of Rockford,*
408 U.S. 104 (1972)...........................................................................................13

*Hoffman Estates v. Flipside, Hoffman Estates, Inc.,*
455 U.S. 489 (1982)...........................................................................................13

*Humphrey v. Lane,*
728 N.E.2d 1039 (Ohio 2000).......................................................................7, 8

*Masterpiece Cakeshop v. Colorado Civil Rights Commission*,
    138 S. Ct. 1719 (2018) ........................................................................................9

*McGlone v. Cheek*,
    534 F. App'x 293 (6th Cir. 2013) ...................................................................13

*Obergefell v. Hodges*,
    135 S. Ct. 2584 (2015) ......................................................................................9

*Reed v. Town of Gilbert*,
    135 S. Ct. 2218 (2015) ....................................................................................10

*Rosenberger v. Rector & Visitors of Univ. of Virginia*,
    515 U.S. 819 (1995) ........................................................................................12

*Texas v. Johnson*,
    491 U.S. 397 (1989) ..........................................................................................9

*Trinity Lutheran Church of Columbia, Inc. v. Comer*,
    137 S. Ct. 2012 (2017) ......................................................................................6

*Winters v. N.Y.*,
    333 U.S. 507 (1948) ........................................................................................13

**Statutes:**

42 U.S.C. § 2000e-1(a) ............................................................................................6

Ohio Rev. Code Ann. § 2929.28 .........................................................................8, 14

Ohio Rev. Code Ann. § 2929.24 .........................................................................8, 14

South Euclid Ohio Code of Ordinances, Chapter 552 ...................................... *passim*

## INTRODUCTION

The Lyceum, a Catholic classical school, seeks an injunction so that it can continue operating consistently with its Catholic faith without risking crippling criminal penalties under the City of South Euclid's new ordinance, Section 552.01 *et seq.* The City had many opportunities to avoid this litigation.  Instead, it chose to be coy.

The Lyceum has repeatedly asked the City to clarify that its law does *not* infringe the school's constitutional rights. First, school leaders showed up to multiple City council meetings, asking the City to reconsider passing a law that interferes with the school's religious autonomy.[1] Instead, the City removed a religious exemption from ordinance drafts that likely would have protected The Lyceum.[2] Second, The Lyceum sent a letter to the City, highlighting the constitutional problems with the law—which the City ignored.[3] Third, to clarify whether the City intended to apply the law to religious schools, The Lyceum sent City officials a public records request to obtain communications concerning the law.[4] The City illegally ignored that request, not once, but twice.[5] As a final measure, The Lyceum sent a letter to the City asking whether the City intended to apply the ordinance to The Lyceum.[6] The City refused to say.[7]

But the City cannot constitutionally pass a law without knowing who it applies to, and without informing its citizens of the same. Laws with criminal penalties must be clear so that citizens know what those laws require and whether they apply to them. The City ignored this basic due process requirement by passing an unconstitutionally vague, sloppily written law that leaves The Lyceum's hiring, admissions, conduct, facility, and other policies subject to criminal

---

[1] *See* Pl.'s Ver. Comp. ¶ 103.
[2] *See id.* ¶ 90.
[3] *See id.* ¶ 104.
[4] *See id.* ¶ 105.
[5] *See id.* ¶ 106.
[6] *See id.* ¶ 117-18.
[7] *See id.* ¶ 119.

sanctions. Having exhausted its attempts to get a response from the City, and in light of the criminal penalties at stake, The Lyceum is left with no other option but to ask this Court to require the City to defend its ordinance. The Lyceum therefore seeks an injunction.

The Lyceum is a small, Catholic college preparatory school that offers its students an academically rigorous and theologically faithful classical education.[8] Theology is central to its curriculum, and Catholic Mass, sacred liturgical music, and prayer punctuate its school day.[9] As a Catholic community, The Lyceum abides by Catholic teachings, including those on marriage and sexuality, and the Church's vision of education.[10] Due to The Lyceum's uniquely Catholic approach to classical education, it draws its school community from among those who affirm Catholic teachings and strive to live them out.[11]

The City's ordinance bans employers and public accommodations from "subjecting any person to differential treatment" based on "creed, religion…gender identity or expression, [and] sexual orientation".[12] Each violation is punishable by $500 in fines and 60 days in jail.[13] The Lyceum is a covered employer, because it regularly employs more than four individuals.[14] Although the Ordinance exempts otherwise discriminatory practices for "business necessity" or as a "necessary religious preference," these vague provisions do not clearly exempt The Lyceum's faith-based employment practices.[15] These provisions also require each religious entity to prove to Defendants that they satisfy these vague, malleable terms. Thus, the Ordinance jeopardizes The Lyceum's ability to hire those who affirm and transmit its Catholic faith to the next generation.

---

[8] Pl.'s Ver. Comp. ¶¶ 28-29.
[9] *See id.* ¶¶ 46-55.
[10] *See id.* ¶¶ 29-32.
[11] *See id*. ¶¶ 33-34.
[12] *See* Sec. 552.01 *et seq.*
[13] Pl.'s Ver. Comp. ¶¶ 97-98.
[14] *See id.* ¶¶ 82, 108-09.
[15] *See id.* ¶¶ 229-31.

Public accommodations include "all…establishments which offers [sic] goods, services, accommodations and entertainment to the public within the City" but does not include any place "which by its nature is distinctly private."[16] The Lyceum does not know whether the City considers it to be a public accommodation.[17] It is a small private school that welcomes the general public to apply, but admission is selective and based on agreement with the school's Catholic faith, previous school records, personal interviews, teacher recommendations, and standardized testing.[18] Since the Ordinance references "educational activity,"[19] does not exempt private schools, and the City refused to declare otherwise in response to the school's many inquiries, the Ordinance applies to nonpublic schools. The Ordinance therefore imperils The Lyceum's ability to select students and use its facilities consistent with its faith.

Finally, the Ordinance prohibits employers from publishing a notice that has the effect of subjecting any person to "differential treatment" based on a protected characteristic, including creed, religion, gender identity or expression, and sexual orientation.[20] The Lyceum wants to publish a notice stating that it hires those who are committed to the Catholic faith, but fears doing so will violate the publication ban.[21] Likewise, the Ordinance bans public accommodations from publishing "directly or indirectly, a statement…which indicates" that an individual is "unwelcome, unacceptable, or undesirable."[22]  The Lyceum wants to publish a notice expressing its faith-based policies on admissions, conduct, and facility use, but fears doing so will violate the publication ban.[23]

---

[16] Sec. 552.01(n).
[17] Pl.'s Ver. Comp. ¶ 113.
[18] *See id.* ¶¶ 114-15.
[19] *See, e.g.,* Sec. 552.01(a).
[20] *See id.*Pl.'s Ver. Comp. ¶¶ 76, 83.
[21] *See id.* ¶¶ 122-26.
[22] *See id.* ¶ 84.
[23] *See id.* ¶¶ 121-26.

3

The Lyceum's freedom to select employees and students who share its religious beliefs, communicate its religious beliefs, conduct itself consistently with those beliefs, and use its facilities consistent with those beliefs is at risk, violating The Lyceum's constitutional rights. The Lyceum requests a preliminary injunction to stop these ongoing constitutional violations.

## STATEMENT OF FACTS

The Lyceum incorporates by reference the statement of facts set forth in Plaintiff's Verified Complaint (Dkt. #1) filed with this Court on April 3, 2019.

## ARGUMENT

The Lyceum needs a preliminary injunction to avoid the imminent loss of constitutional rights. To obtain one, The Lyceum must show that (1) it has a strong likelihood of success on the merits, (2) it will suffer irreparable injury absent the injunction, (3) issuing the injunction would not cause substantial harm to others, and (4) the public interest would be served by issuing the injunction.[24] Each factor weighs in favor of granting The Lyceum's motion for preliminary injunction.

I.   **The Lyceum Will Likely Succeed in Showing that the Ordinance Violates Its Religious Exercise, Free Speech, and Due Process Rights.**

The First Amendment to the U.S. Constitution and Article I, Section 7 of the Ohio Constitution protect The Lyceum's right to speak and act according to its religious convictions. The Ordinance's employment and public accommodations provisions unlawfully abridge The Lyceum's religious exercise, compel its speech, and constitute content and viewpoint discrimination. The publication ban, Section 552.04(b), is also unconstitutionally vague.[25]

---

[24] *See Certified Restoration Dry Cleaning v. Tenke*, 511 F.3d 535, 542 (6th Cir. 2007)
[25] The Lyceum raises additional claims in its Complaint and reserves the right to pursue them in later filings.

### A. The Ordinance violates The Lyceum's right to exercise its sincerely held religious beliefs.

The Ordinance intrudes on The Lyceum's religious exercise and on the community it has built around shared theological convictions by requiring it to hire faculty or accept students who reject the Catholic Church's teachings—including its teachings on sexual ethics—and open its sex-specific restrooms and athletic teams to members of the opposite sex.[26]

### 1. The Ordinance is Subject to Strict Scrutiny under the Free Exercise Clause of the First Amendment to the U.S. Constitution.

Under the First Amendment to the U.S. Constitution, the government "shall make no law respecting an establishment of religion or prohibiting the free exercise thereof." A "law burdening religious practice that is not neutral or not of general application must undergo the most rigorous of scrutiny."[27] In *Lukumi*, city laws exempted most secular animal killings, but prohibited those motivated by religious practice.[28] This gerrymandered "pattern of exemptions" rendered the laws subject to strict scrutiny.[29] Relying on this principle, the Third Circuit in *Fraternal Order of Police Newark Lodge No. 12 v. City of Newark*,[30] concluded that a police department could not constitutionally provide medical exemptions from its no-beard policy without also permitting religious exemptions. Even allowing one exemption warranted heightened scrutiny "because it indicates that the Department has made a value judgment that secular (i.e., medical) motivations for wearing a beard are important enough to overcome its general interest in uniformity but that religious motivations are not."[31]

---

[26] *See* Pl.'s Ver. Comp. ¶¶ 142-51.
[27] *Church of The Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546 (1993).
[28] *Id*. at 535-37.
[29] *Id.*  at 537, 546.
[30] 170 F.3d 359 (3d Cir. 1999).
[31] *Id*. at 366.

Similarly, the Ordinance is not neutral or generally applicable because it exempts secular conduct, without exempting religious conduct. The Ordinance includes several exceptions, such as permitting discrimination where necessary for a business purpose[32] or as a "necessary result" of a "bona fide occupational qualification or a bona fide physical requirement"[33]. The Ordinance also exempts conduct that does not involve balancing or necessity: discriminatory practices "designed primarily to encourage participation by a protected group"[34], or "to carry out an affirmative action plan"[35]. Yet the Ordinance does not exempt religious organizations, as many nondiscrimination laws do.[36] [37]

Notably, the categorical exemptions for affirmative action plans and programs designed to encourage participation by a protected group are available even if less discriminatory means *are* available. Yet a religious employer must show that its discrimination is a "necessary result" of a "permissible bona fide religious or denominational preference"—a phrase it fails to define.[38] Because the Ordinance provides categorical secular exemptions, but no religious exemption, the Ordinance is not neutral or generally applicable, and is subject to strict scrutiny.

Additionally, the Supreme Court has rejected the idea "that any application of a valid and neutral law of general applicability is necessarily constitutional under the Free Exercise Clause," particularly where it "concerns government interference with an internal church decision that affects the faith and mission of the church itself.'"[39] The City, by prohibiting The Lyceum from

---

[32] Sec. 552.06(a).

[33] Sec. 552.06(e).

[34] Sec. 552.06(b).

[35] Sec. 552.06(d).

[36] *See*, *e.g.*, 42 U.S.C. § 2000e-1(a) (exempting a "religious corporation, association, educational institution, or society" from Title VII's ban on employment discrimination based on religion).

[37] Despite including a definition for "religious organization" in Section 552.01(q), the term appears nowhere else in the Ordinance. Having no apparent purpose, the definition of a religious organization appears to inadvertently been left in the ordinance when the religious exemption was removed.

[38] Sec. 552.06(f).

[39] *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2021 n.2 (2017) (cleaned up).

requiring all its community members to maintain fidelity to Catholic teachings, interferes with The Lyceum's internal decisions related to its faith and mission. The Ordinance thus unconstitutionally interferes with The Lyceum's religious autonomy.

**2.  The Ordinance is Subject to Strict Scrutiny under Ohio Constitution Article I, Section 7.**

Ohio Constitution Article I, Section 7 provides that all people "have a natural and indefeasible right to worship Almighty God according to the dictates of their own conscience…nor shall any interference with the rights of conscience be permitted." Comparing this provision to the First Amendment to the U.S. Constitution, the Ohio Supreme Court stated that its "free exercise protection is broader" than the First Amendment's, and "we therefore vary from the federal test for religiously neutral, evenly applied government actions. We apply a different standard to a different constitutional protection."[40] That standard is strict scrutiny. Under the Ohio Constitution, a plaintiff must "show that his religious beliefs are truly held and that the governmental enactment has a coercive affect against him in the practice of his religion."[41] "[T]he burden [then] shifts to the state to prove that the regulation furthers a compelling state interest, and is the least restrictive means available of furthering that state interest."[42]

The Lyceum's religious beliefs are truly and sincerely held. It integrates faith and reason into all of its classes.[43]  The Lyceum begins each school day, and every class, with prayer.[44]  The Lyceum abides by all Catholic Church teachings, and has drafted a policy that reflects the Church's teaching relating specifically to the immutability of the sexes, marriage, and sexual ethics.[45]  The Ordinance will have a coercive effect on The Lyceum's religious practice. The employment

---

[40] *Humphrey v. Lane*, 728 N.E.2d 1039, 1045 (Ohio 2000).
[41] *Id.*
[42] *Id.*
[43] *See* Pls.' Ver. Compl. ¶ 28.
[44] *See id.* at ¶¶ 50-51.
[45] *See id.* at ¶¶ 121.

provisions will prevent the Lyceum from hiring only faculty that adhere to The Lyceum's religious beliefs. The public accommodations provision will prevent The Lyceum from accepting only students that submit to Catholic teachings, and from establishing access to its private facilities and its athletic teams based on its religious beliefs about biological sex.[46] This section also bars The Lyceum from publishing "directly or indirectly, a statement…which indicates…that an individual's…presence at…the place of public accommodation is objectionable, unwelcome, unacceptable, or undesirable," which would include publishing the policy that The Lyceum referenced above. This coercion is enhanced not only by the Ordinance's civil penalty, but also by the possible jail time.[47]

Because The Lyceum's beliefs are truly held and the Ordinance would coerce The Lyceum to violate those beliefs, the City must show that the Ordinance is the "least restrictive means available of furthering" a compelling governmental interest.[48]

### 3.  The Ordinance Fails Strict Scrutiny.

Because the Ordinance is subject to strict scrutiny under both the U.S. and Ohio Constitutions, the City must show that the Ordinance is the least restrictive means of furthering a compelling government interest.[49] In enacting this law, the City is caught in a catch-22: either the Ordinance is too broad to be narrowly tailored to a particular, compelling government interest; or the City's interest in enacting the Ordinance is an illegitimate one, and thus not compelling.

---

[46] Sec. 552.04(a).
[47] *See* Sec. 552.99 (Ordinance violations are a third degree misdemeanor); *see also* Ohio Rev. Code Ann. § 2929.28(A)(2)(iii) (third degree misdemeanors are punishable with up to $500 in fines or restitution); *id.* § 2929.24 (A)(3) (third degree misdemeanors are punishable with up to 60 days in jail)).
[48] *Humphrey*, 728 N.E.2d at 1045.
[49] *See Lukumi*, 508 U.S. at 531–32; *Humphrey*, 728 N.E.2d at 1045.

The City has no compelling interest in prohibiting constitutionally protected religious practice, much less in applying the Ordinance to The Lyceum.[50] The City has no legitimate interest in censoring The Lyceum's religious speech, including its speech about biological sex, marriage, and sexual ethics. The Supreme Court has twice emphasized that religious beliefs about marriage are protected.[51] Similarly, the City cannot claim a compelling interest in sheltering the public from ideas it dislikes. On the contrary: "If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable."[52]

Nor is the Ordinance narrowly tailored for at least two reasons. First, the Ordinance categorically exempts discriminatory practices designed to "encourage participation by a protected group"[53], and "to carry out an affirmative action plan"[54]. A law cannot be narrowly tailored to prevent discrimination if it exempts discrimination.[55]

Second, the Ordinance prohibits not only statements announcing unlawful public accommodations discrimination or intent to discriminate, but *all* statements that indicate "that an individual's patronage of, or presence at, the business establishment or place of public accommodations is objectionable, unwelcome, unacceptable, or undesirable."[56] Criticizing a group or ideas associated with a group could imply that an individual identifying with that group is

---

[50] *See Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 430–31 (2006) (stating that strict scrutiny requires the government to show a compelling interest in applying the law specifically to the plaintiff).
[51] *See Masterpiece Cakeshop v. Colo. Civil Rights Comm'n*, 138 S.Ct. 1719, 1727 (2018) ("the religious…objections to gay marriage are protected views and in some instances protected forms of expression"); *see also Obergefell v. Hodges*, 135 S. Ct. 2584, 2607 (2015) ("[t]he First Amendment ensures that religious organizations…are given proper protection as they seek to teach the principles [about marriage] that are so fulfilling and so central to their lives and faiths").
[52] *Texas v. Johnson*, 491 U.S. 397, 414 (1989).
[53]  Sec. 552.06(b).
[54]  Sec. 552.06(d).
[55] *See Lukumi*, 508 U.S. at 547 ("[A] law cannot be regarded as protecting an interest 'of the highest order' … when it leaves appreciable damage to that supposedly vital interest unprohibited.").
[56] Section 552.04(b).

9

"unwelcome." Therefore, the Ordinance covers more speech than is necessary to achieve any putative objective of eliminating discrimination against specific categories of persons.

In sum, either the City's interest in the Ordinance is an illegitimate one (intended to limit the religious exercise and free speech rights of religious entities like The Lyceum), and therefore not compelling, or it is a broad nondiscrimination interest with several exemptions, in which case it is not narrowly tailored. In any event, the Ordinance fails strict scrutiny and thus unconstitutionally suppresses The Lyceum's religious freedom.

### B. The Ordinance violates The Lyceum's Free Speech Rights under the First Amendment to the U.S. Constitution.

The Ordinance is also subject to strict scrutiny under the Free Speech Clause of the First Amendment to the U.S. Constitution because it regulates speech based on content and viewpoint.

### 1. The Ordinance is an Unconstitutional Content-Based Regulation.

The Ordinance regulates The Lyceum's speech based on its content and is therefore subject to strict scrutiny under the First Amendment's Free Speech Clause. "Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests."[57]

A law regulates content if it "draws distinctions based on the message a speaker conveys."[58] "Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed."[59] Two Ordinance provisions are content-based. The Ordinance's employment publication ban forbids any person "[t]o print or

---

[57] *Reed v. Town of Gilbert,* 135 S. Ct. 2218, 2226 (2015).
[58] *Id.* at 2227.
[59] *Id*.

publish, or cause to be printed or published, any discriminatory notice or advertisement relating to employment."[60]  "Discriminatory" means

> [A]ny act, policy or practice that, regardless of intent, has the effect of subjecting any person to differential treatment as a result of that person's age, race, color, creed, religion, national origin, ancestry, disability, marital status, military status, gender, gender identity or expression, sexual orientation, source of income, ethnic group, or physical characteristic.[61]

As a result, messages relating to employment about the enumerated topics (especially "creed," "religion," "gender identity or expression," and "sexual orientation") are prohibited, while statements relating to employment on any other topic is permitted.

The public accommodations publication ban is also content based, prohibiting publication of any statement that "indicates that the full and equal enjoyment of…facilities…and accommodations…will be unlawfully refused," or that "an individual's patronage…or presence" is "objectionable, unwelcome, unacceptable or undesirable."[62] Any message indicating that a person in a protected group will be "objectionable, unwelcome, unacceptable or undesirable" is prohibited, while messages about other topics are allowed. Both the employment and public accommodations publication provisions are thus content-based, because they apply "to particular speech because of the topic discussed or the idea or message expressed."[63]    Both provisions are therefore subject to strict scrutiny and, for the reasons set forth in Part I.A.3, *supra*, they cannot satisfy this standard and are unconstitutional.

### 2.  The Ordinance is an Unconstitutional Viewpoint-Based Regulation.

The employment and public accommodations publication bans also regulate speech based on viewpoint. Viewpoint-based regulations are an "egregious form of content discrimination"

---

[60] Section 552.02(f).
[61] *Id*. § 552.01(e).
[62] *Id*. § 552.04(b).
[63] *Reed*, 135 S. Ct. at 2227.

11

where the government targets "particular views taken by speakers on a subject."[64] Viewpoint-based regulations are subject to strict scrutiny.[65] [66] The Ordinance cannot meet this standard.[67]

The Ordinance is viewpoint-based because it allows employers or public accommodations to discuss the *topic* of whether members of the protected classes are eligible for employment or otherwise welcome at the covered entities, so long as the speaker agrees with the City's position. The Ordinance exempts some speech, "designed primarily to *encourage* participation by protected group."[68] Also, the public accommodations publication ban, while banning messages indicating that a person in a protected category group will be "objectionable, unwelcome, unacceptable or undesirable," permits businesses to declare that people in protected categories are welcome and desirable at their establishments. The Ordinance thus stakes out a government-approved viewpoint on certain topics while subjecting the expression of other views to criminal penalties, and unconstitutionally infringes The Lyceum's right to free speech.

### C. The Ordinance is Unconstitutionally Vague under the Fourteenth Amendment to the U.S. Constitution.

Section 552.04(b) is void for vagueness. A law may be void for vagueness under the Fourteenth Amendment Due Process Clause if the law "(1) fails to apprise persons of ordinary intelligence of the prohibited conduct, or (2) encourages arbitrary and discriminatory enforcement."[69] The Ordinance is subject to an even higher standard of clarity for two reasons: it implicates First Amendment freedoms, and it involves criminal sanctions.

When laws threaten First Amendment freedoms, more specificity is demanded:

---

[64] *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 829 (1995).
[65] *See Bible Believers v. Wayne Cnty.,* 805 F.3d 228, 248 (6th Cir. 2015) (en banc).
[66] Viewpoint discrimination may be per se unconstitutional. *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 836-37 (1995) (invalidating the University's viewpoint-discriminatory policy without discussing the state interest or narrow tailoring).
[67] *See* Part.I.A.3, *supra*.
[68] Sec. 552.06(b) (emphasis added).
[69] *Chicago v. Morales*, 527 U.S. 41, 90 (1999) (holding that a loitering ordinance intended to disrupt gang activity was unconstitutionally vague).

[T]he principle of clarity is especially demanding when First Amendment freedoms are at risk. . . . If, for example, the law interferes with the right of free speech or of association, a more stringent vagueness test should apply.[70]

These principles are important because "[u]ncertain meanings inevitably lead citizens to steer far wider of the unlawful zone than if the boundaries of the forbidden areas were clearly marked."[71] As discussed above, the Ordinance threatens religious freedom and freedom of speech, and thus must meet a heightened specificity standard. In addition to the extra scrutiny required in constitutional cases, criminal laws also require more specificity: "The standards of certainty in statutes punishing for offenses is higher than in those depending primarily upon civil sanction for enforcement…Men of common intelligence cannot be required to guess at the [law's] meaning…."[72]

In *Morales*, the law at issue required that a police officer "reasonably believe that at least one of the two or more persons present in a 'public place' is a 'criminal street gang member,'" and that the persons be "'loitering,' which the ordinance defines as 'remaining in any one place with no apparent purpose.'"[73] In holding that the ordinance was too vague to make clear what kind of loitering was covered, the Court wrote: "This is not an ordinance that simply regulates business behavior and contains a scienter requirement. It is a criminal law that contains no *mens rea* requirement, and infringes on constitutionally protected rights."[74] The ordinance was unconstitutionally vague: it "affords too much discretion to the police and too little notice to citizens who wish to use the public streets."[75]

---

[70] *McGlone v. Cheek*, 534 F. App'x 293, 297 (6th Cir. 2013) (citing *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982)) (cleaned up).
[71] *Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972) (cleaned up).
[72] *Winters v. NY*, 333 U.S. 507, 515 (1948) (cleaned up).
[73] 527 U.S. at 47 (cleaned up).
[74] *Id.* at 55 (cleaned up).
[75] *Id.* at 64.

13

So, too, here. The Ordinance is a criminal law without a *mens rea* requirement. Section 552.99 provides that violations are a third-degree misdemeanor, and thus punishable by up to $500 in fines, restitution, or up to 60 days in jail.[76] But this Ordinance goes further than *Morales* by being not only a vague criminal law, but one that cabins free speech.  In this case, the Ordinance bars any statement that "indicates that an individual's patronage of, or presence at, the business establishment or place of public accommodation is objectionable, unwelcome, unacceptable or undesirable."[77] This section does not provide people of ordinary intelligence adequate notice of what statements are prohibited because the terms "objectionable, unwelcome, unacceptable, or undesirable" are undefined, broad, and subjective.[78]

The vagueness is compounded by the word "indicates"—the Ordinance does not merely prohibit public accommodations proprietors from intentionally communicating that a person is unwelcome, it prohibits any message that may "indicate" that an individual's presence is "objectionable, unwelcome, unacceptable, or undesirable," which makes the speaker liable for how the words are interpreted by third parties. Such broad language also implicates the other ground for constitutional vagueness: "arbitrary and discriminatory enforcement."[79] Authorities enforcing this section have myriad opportunities for arbitrary or discriminatory enforcement, especially since the City has refused to answer The Lyceum's questions about the Ordinance's applicability to The Lyceum. Because the Ordinance does not allow persons of ordinary intelligence to determine what conduct it prohibits and because it enables arbitrary and discriminatory enforcement, it is unconstitutionally vague under the Fourteenth Amendment's Due Process Clause.

---

[76] *See* Ohio Rev. Code Ann. § 2929.28(A)(2)(iii) (fines, restitution), § 2929.24(A)(3) (jail).
[77] Sec. 552.04(b).
[78] *See Brush & Nib Studio, LLC v. City of Phoenix*, 418 P.3d 426, 442-44 (Ariz. Ct. App. 2018) (finding unconstitutional vagueness in publication ban on communicating that someone would be "unwelcome, objectionable, unacceptable, undesirable, or not solicited").
[79] *Morales*, 527 U.S. at 90.

14

## II.     The Lyceum Will Suffer Irreparable Injury Absent an Injunction, An Injunction Will Not Cause Substantial Harm to Others and Will Serve the Public Interest.

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."[80] The Ordinance represses The Lyceum's freedom to communicate its beliefs and tramples its freedom to select community members and use its facilities consistent with its faith. This ongoing and irreparable harm to the Lyceum is exacerbated by it being subject to punishment that includes fines and jail time.

"[I]f the plaintiff shows a substantial likelihood that the challenged law is unconstitutional, no substantial harm to others can be said to inhere its enjoinment."[81] As shown above, The Lyceum is likely to succeed on the merits of its claims that the Ordinance is unconstitutional. Accordingly, an injunction will not substantially harm others. Moreover, "it is always in the public interest to prevent violation of a party's constitutional rights."[82] Because The Lyceum is likely to prevail on the merits, an injunction serves the public interest.

## CONCLUSION

The Lyceum is a private religious school, not a public school or a sandwich shop.  While the government has some leeway to regulate the latter, it cannot suppress constitutional freedoms or confuse citizens about what the law requires. The Lyceum must be free to teach and operate by its beliefs—the City has now compromised that freedom. The Lyceum therefore asks this Court to enjoin Section 552.01 *et seq.*, as-applied to The Lyceum, and Section 552.04(b) facially, to stop these ongoing constitutional violations.

---

[80] *Elrod v. Burns,* 427 U.S. 347, 373 (1976).
[81] *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville and Davidson Cnty.,* 274 F.3d 377, 400 (6th Cir. 2001).
[82] *G & V Lounge, Inc. v. Michigan Liquor Control Comm'n,* 23 F.3d 1071, 1079 (6th Cir. 1994).

Dated this 7th day of May, 2019.

Respectfully submitted,

 s/ Christiana M. Holcomb
Christiana M. Holcomb*
DC Bar #176922
Christen M. Price*
DC Bar #1016277
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, D.C. 20001
Telephone: (202) 393-8690
Fax: (202) 347-3622
Email: CHolcomb@ADFlegal.org
Email: CPrice@ADFlegal.org

Matthew M. Nee
Ohio Bar #0072025
NEE LAW FIRM, LLC
Regency Centre
26032 Detroit Road, Suite 5
Westlake, OH 44145
 Telephone: (440) 793-7720
 Facsimile: (440) 793-7920
 Email: Matt@NeeLawFirm.com

 David A. Cortman*
 GA Bar #188810
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Road NE,
Suite D-1100
Lawrenceville, GA 30043
Telephone: (770) 339-0774
Fax: (770) 339-6744
Email: DCortman@ADFlegal.org

*Counsel for Plaintiffs*

*\*Admitted Pro Hac Vice*

16