IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **The Lyceum,** Plaintiff | **Case No.** 1:19-cv-731 |
| v. | **Judge:** James S. Gwin |
| **The City of South Euclid,** Defendant. | |

## DECLARATION OF KEITH ARI BENJAMIN

I, Keith Ari Benjamin, am over the age of 18, I have personal knowledge of the information contained in this declaration and if called upon I could competently testify to these facts.

1. I am the Director of Community Services and the Clerk of Council at the City of South Euclid, Ohio, and I have held these two positions since 2005.

2. In these capacities I have worked closely with the South Euclid community for over a decade to ensure that the City is a safe and welcoming place. Helping the City further these goals is a core part of my job duties and my training.

3. I hold a Master's Degree and Certification in Diversity Management from Cleveland State University. I have used these degrees to develop municipal equity and inclusion practices in Northeast Ohio and elsewhere.

4. In 1996, I helped found the First Suburbs' Consortium of Cleveland, an official council of municipal governments, to assist inner-ring Cleveland suburbs including South Euclid to keep their diverse communities vital, stable, and welcoming places to live and work.

5. I also helped South Euclid develop its anti-discrimination laws, Ordinance 552.01 *et seq*. My specific tasks included coordinating community input on the Ordinance, researching best practices, and organizing and recording all public meetings and correspondence related to the Ordinance.

6. On September 30, 2015, the City enacted its first local anti-discrimination ordinance, which protected certain marginalized groups not protected by state or federal law—including lesbian, gay, bisexual, and transgender (LGBT) people—from discrimination in housing. I became aware of the need for such anti-discrimination laws after undergoing fair housing compliance training on the City's behalf. This housing ordinance passed after three regular public hearings, with no community objection.

7. Following passage of the housing ordinance and after additional education about the harms of discrimination, I met with a small group of South Euclid residents to discuss the need for local protections in public accommodations and employment as well as in housing. To the best of my recollection these meetings occurred in about April of 2017.

8. I then worked with City Council and residents to develop what is now Ord. 552.01 *et seq*—a comprehensive local law that protects people from discrimination on the basis of sexual orientation, gender identity, age, disability, ethnic group, marital status, military status, source of income, receipt of public assistance, all classes protected by federal and state law, and association with these protected classes, in housing, public accommodations, and employment, in South Euclid.

9. In working closely with City Council to craft the Ordinance, I reviewed similar laws in other municipalities, I relied on my past experience and training, and I solicited feedback from residents, other individuals, and organizations including Equality Ohio and the Catholic Diocese of Cleveland.

10. The first version of the Ordinance was introduced on June 12, 2017. That version maintained protections against discrimination in housing, and added protections in employment, education, and places of public accommodation.

11. Before it was ultimately passed, the Ordinance underwent many iterations to ensure that it would be an effective tool to discourage and, when necessary, provide a remedy for illegal discrimination as defined by the Ordinance, while also respecting to the extent possible the perspectives of those who objected to the proposed law. The City's deliberative process included lengthy correspondence and individual meetings with proponents and opponents of the proposed law, as well as over a dozen public meetings of the City Council and its committees in which the proposed Ordinance was discussed.

12. For example, I sent correspondence to faith groups and religious leaders in the City to inform them of the Ordinance's drafting progress and to invite their input.

13. As part of these community conversations, the City worked with both the Catholic Diocese and Equality Ohio to ensure that protections on behalf of protected groups including LGBT people did not burden the rights of religious institutions. The City included carefully-drawn religious exemptions in the law after consulting these groups and others.

14. Representatives of The Lyceum School participated in this legislative process. Its legal counsel from the Alliance Defending Freedom (ADF) contacted me and other City representatives to express concern about the Ordinance's possible application to the school and other religious institutions. The Lyceum's representatives voiced their objections to the Ordinance at various public meetings and in correspondence. Specifically, The Lyceum expressed concern that having to include LGBT persons in its school would violate its religious beliefs.

15. The City made changes to the Ordinance to accommodate these religious concerns. For example, the City deleted the provision of the law that would have applied to educational institutions (which at that time was §522.04). I informed The Lyceum's counsel of this change and advised the Council that the revised draft of the Ordinance would *not* apply to The Lyceum's admissions policies or students.

16. Similarly, the City included exemptions in the Ordinance to allow religious entities like The Lyceum to exercise their religious rights without negating the effect of the anti-discrimination protections the City sought to ensure. I advised the Council that the Ordinance as written would *not* to apply to employees of The Lyceum who carried on the school's religious mission.

17. The Ordinance passed by a unanimous vote of the City Council on April 9, 2018, almost a year after it was first introduced, and after many thoughtful drafts had been generated, after numerous community conversations had taken place, and after City officials gave full and respectful consideration to all the comments and perspectives offered throughout the legislative process.

I, Keith Ari Benjamin declare under penalty of perjury that the foregoing is true and correct.

Executed this 21st day of May, 2019.

_____
Keith Ari Benjamin